432 S.E.2d 549

**Dean M. HARRIS, Plaintiff,**

v.

**Harold ADKINS, Defendant.**

**No. 21537.**

Supreme Court of Appeals of West Virginia.

Submitted June 1, 1993.

Decided June 28, 1993.

Michael Edward Nogay, Sellitti & Nogay, Weirton, for plaintiff.

Jeffrey A. Holmstrand, Rhonda L. Wade, Bachman, Hess, Bachmann & Garden, Wheeling, W. Dean DeLaMater, DeLaMater, Hague & Bohach, Weirton, for defendant.

MILLER, Justice:

This case comes before us through a certified question from the Circuit Court of Hancock County, pursuant to W.Va.Code, 58–5–2 (1967).[1] We are asked to decide whether the Petition Clause of Section 16 of Article III of the West Virginia Constitution [2] provides absolute immunity to a defendant charged with expressing libelous falsehoods about a city councilman at a public city council meeting.[3] We note initially that in *Webb v. Fury*, 167 W.Va. 434, 282 S.E.2d 28 (1981), our Petition Clause was held to afford protection similar to that provided by the First Amendment to the United States Constitution.[4] In Syllabus Point 1 of *Webb*, we stated: "The right to petition the government embodied in the First Amendment to the United States Constitution is also protected by article III, section 16 of the Constitution of West Virginia."

### I.

On January 31, 1992, the defendant, Harold Adkins, read aloud the following statement during a public meeting for the Weirton City Council:

"My name is Harold Adkins; I reside at 121 Pikeview Rd., City.

"I want to make a statement here tonight which I do have typed up, and it begins: On December 28, 1991, I was approached by a resident of Weirton to inform me of something that he had heard concerning me and my business, which is Adkins Upholstery, 3102 Main St. I was told that Councilman Dean Harris was approached by the manager of a local store, which I do repairs for, to discuss buying a small parcel of land

---

1. W.Va.Code, 58–5–2, provides, in pertinent part:

   "Any question arising ... upon a challenge of the sufficiency of a pleading ... in any case within the appellate jurisdiction of the supreme court of appeals, may, in the discretion of the circuit court in which it arises, and shall, on the joint application of the parties to the suit, in beneficial interest, be certified by it to the supreme court of appeals for its decision[.]"

2. Section 16 of Article III of the West Virginia Constitution provides: "The right of the people to assemble in a peaceable manner, to consult for the common good, to instruct their representatives, or to apply for redress of grievances, shall be held inviolate."

3. The certified question reads: "Whether the reading of an alleged false and malicious public statement about a city councilman at a public city council meeting, which is unrelated to the passage of or enforcement of any law, constitutes an absolute privileged petitioning activity."

4. The First Amendment to the United States Constitution states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

behind his house, which belongs to the City.

"Mr. Harris then asked this individual if his store did business with me, and was told yes. Mr. Harris then said, do me a favor and not do business with Adkins, and I'll do you a favor.

"On January 10th this year, I called this individual, the manager of the store, and I told him what I heard and I wanted to know if it was true or not. He informed me that it was true. He also told me Mr. Harris had approached the owner of the store and tried to persuade him to quit doing business with me.

"Now, in conclusion, I ask you, the governing body, is this the way to promote and keep small business in Weirton. Also, can you, as the governing body of Weirton, take any action against this kind of unethical conduct by an elected official."

Shortly thereafter, the city councilman, Dean Harris, sued Mr. Adkins in the Circuit Court of Hancock County for defamation, alleging that his personal and political reputations were damaged. Mr. Adkins filed a motion to dismiss the case on the ground that he was petitioning the government for redress when he read the statement during the city council meeting and that this activity was absolutely privileged under our holding in *Webb v. Fury, supra.* The circuit court denied the defendant's motion and certified the question of whether an absolute immunity existed in view of the United States Supreme Court's decision in *McDonald v. Smith,* 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985).[5]

5. The parties do not dispute that Mr. Adkins' statements addressed to the members of council fall within the scope of the Petition Clause.

6. In *Webb,* we relied on *Noerr–Pennington* in reaching the result:
"These cases form what is commonly referred to as the *Noerr–Pennington* doctrine. As this doctrine forms the foundation of the petitioner's right to petition argument, and as there are no constitutional law cases on point in this jurisdiction, an exposition of the doctrine is appropriate here." 167 W.Va. at 443, 282 S.E.2d at 34.

## II.

In *Webb v. Fury, supra,* which was decided before the United States Supreme Court had occasion to determine the scope of the Petition Clause in *McDonald v. Smith, supra,* we did not attempt a direct analysis of the Petition Clause. Rather, we focused on what was termed the *Noerr–Pennington* doctrine. *Webb* involved an environmental group and one of its members, Rick Webb, who had written a complaint under the Federal Surface Mining Control and Reclamation Act, 30 U.S.C.A. § 1252(e)(2), regarding certain violations by a coal company. Similar charges were made in a newsletter. The coal company sued in the circuit court for defamation. After an adverse ruling on a motion for summary judgment, Mr. Webb sought a prohibition to foreclose the action.

Because there was not a case on point in this jurisdiction or a United States Supreme Court decision, the parties argued the law contained in the United States Supreme Court's decisions of *Eastern Railroad President's Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).[6] These cases developed what is known as the *Noerr–Pennington* doctrine, which we discussed at some length in *Webb* and concluded:

"The clear import of the *Noerr–Pennington* doctrine is to immunize from legal action persons who attempt to induce the passage or enforcement of law or to solicit governmental action even though the result of such activities may indirectly cause injury to others. Such

That the argument was based upon *Noerr–Pennington* also is reflected by Justice Neely's dissent in *Webb* which was based on a different analysis of *Noerr–Pennington,* as the first sentence in the dissent indicates: "The majority opinion in this case is essentially well reasoned and written; it appears at first blush eminently sensible, but I feel I must dissent because it overstates the rule of the *Noerr–Pennington* doctrine and fails adequately to explore appropriate procedures for cases of this sort." 167 W.Va. at 461, 282 S.E.2d at 43.

immunity is not limited to attempts to influence legislative and executive functions but extends as well to protect 'the use of administrative or judicial processes....' *Otter Tail Power Co. v. U.S.*, 410 U.S. 366, 380, 93 S.Ct. 1022, 1031, 35 L.Ed.2d 359, 369 (1973)[,] *rehearing denied,* 411 U.S. 910, 93 S.Ct. 1523, 36 L.Ed.2d 201[,] *on remand,* 360 F.Supp. 451, *aff'd*[,] 417 U.S. 901, 94 S.Ct. 2594, 41 L.Ed.2d 207." 167 W.Va. at 445, 282 S.E.2d at 35.

We also concluded in *Webb* that "the *Noerr–Pennington* doctrine and its application to the facts of this case leads us to conclude that the petitioners' activities involve the exercise of the right to petition" and were, therefore, absolutely protected. 167 W.Va. at 459, 282 S.E.2d at 43.

Some four years after *Webb,* in *McDonald v. Smith, supra,* the United States Supreme Court was asked to reach a similar result based on the *Noerr–Pennington* doctrine. The United States Supreme Court refused this invitation, explaining that "[t]he right to petition is cut from the same cloth as the other guarantees of [the First Amendment], and is an assurance of a particular freedom of expression." 472 U.S. at 482, 105 S.Ct. at 2789, 86 L.Ed.2d at 388. As a consequence, it went on to conclude that there was nothing in the First Amendment law that elevated the right to petition to a special higher status than the rights of freedom of speech and press:

"To accept petitioner's claim of absolute immunity would elevate the Petition Clause to special First Amendment status. The Petition Clause, however, was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble.... These First Amendment rights are inseparable, ... and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions." 472 U.S. at 486, 105 S.Ct.

at 2791, 86 L.Ed.2d at 390. (Citations omitted).

Thus, the *McDonald* Court established an essential equality between the First Amendment rights and, therefore, the right to petition was given the same protection against defamation suits as other First Amendment rights.[7] Justice Brennan, in his concurring opinion, elaborated on this protection when he stated that petitioning the government is protected by the actual malice standard:

"There is no persuasive reason for according greater or lesser protection to expression on matters of public importance depending on whether the expression consists of speaking to neighbors across the backyard fence, publishing an editorial in the local newspaper, or sending a letter to the President of the United States. It necessarily follows that expression falling within the scope of the Petition Clause, while fully protected by the actual-malice standard set forth in *New York Times Co. v. Sullivan,* [376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)], is not shielded by an absolute privilege." 472 U.S. at 490, 105 S.Ct. at 2794, 86 L.Ed.2d at 393.

We agree with the reasoning in *McDonald,* which contained no dissent, and we can find no persuasive reason why our Constitution should provide greater protection than the First Amendment as to the right to petition. Accordingly, we hold that the right to petition the government found in Section 16 of Article III of the West Virginia Constitution is comparable to that found in the First Amendment to the United States Constitution. It does not provide an absolute privilege for intentional and reckless falsehoods, but the right is protected by the actual malice standard of *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). To the extent that *Webb v. Fury, supra,* states to the contrary, it is overruled.[8]

---

**7.** The majority expressed the matter as "petitions ... that contain intentional and reckless falsehoods 'do not enjoy constitutional protection,' *Garrison v. Louisiana,* 379 U.S. 64, 75 [85 S.Ct. 209, 216, 13 L.Ed.2d 125, 133] (1964), and

may ... be reached by the law of libel." *McDonald v. Smith,* 472 U.S. at 486, 105 S.Ct. at 2791, 86 L.Ed.2d at 389–90. (Citation omitted).

**8.** We are aware of no state that has adopted a more protective constitutional standard than

For this reason, we answer the certified question in the negative and hold that there is no absolute privilege attached to the right to petition. Whether the plaintiff can meet the actual malice standard is a matter outside the certified question. We leave it to the sound discretion of the trial court.

Having answered the certified question, this action is, therefore, dismissed.

Certified question answered and dismissed.

that contained in *McDonald v. Smith, supra.* *See, e.g., Doe v. Alaska Superior Court, Third Judicial District,* 721 P.2d 617 (Alaska 1986); *Kahn v. Bower,* 232 Cal.App.3d 1599, 284 Cal. Rptr. 244 (1991); *Kemp v. State Board of Agriculture,* 803 P.2d 498 (Colo.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2798, 115 L.Ed.2d 972 (1991); *Arlington Heights Nat'l Bk. v. Arlington Heights Federal Savings & Loan Ass'n,* 37 Ill.2d 546, 229 N.E.2d 514 (1967); *Hodgins Kennels, Inc. v. Durbin,* 170 Mich.App. 474, 429 N.W.2d 189 (1988), *rev'd in part on other grounds,* 432 Mich. 894, 438 N.W.2d 247 (1989); *In re Disciplinary Action Against Graham,* 453 N.W.2d 313 (Minn.1990). However, we note that Maryland adopted a standard similar to that espoused in *Webb v. Fury, supra,* in *Bass v. Rohr,* 57 Md.App. 609, 471 A.2d 752 (1984), but, in light of *McDonald, Bass* was overruled by *Miner v. Novotny,* 304 Md. 164, 498 A.2d 269 (1985).