566 S.E.2d 603

**Spencer and Helen GRAHAM, Plaintiffs Below, Appellants**

v.

**Samuel H. BEVERAGE, P.C., in His Capacity as Commissioner of Highways, State of West Virginia Department of Transportation, Division of Highways, Earle and Jean Parker, and Paul Burcham, Defendants Below, Appellees**

No. 30110.

Supreme Court of Appeals of West Virginia.

Submitted April 23, 2002.

Decided June 12, 2002.

Braun A. Hamstead, Brian J. McAuliffe, Hamstead & Associates, L.C., Charles Town, for the Appellants.

William R. Kuykendall, Keyser, for the Appellee, Samuel H. Beverage, Comm'r.

Michael D. Lorensen, Tracy A. Rohrbaugh, Bowles Rice McDavid Graff & Love, P.L.L.C., Martinsburg, for the Appellees, Earle and Jean Parker.

ALBRIGHT, Justice:

Appellants/plaintiffs below, Spencer and Helen Graham, appeal from separate orders of the Circuit Court of Berkeley County dated April 5, 2001, from which summary judgment was granted to the appellees/defendants below Earle and Jean Parker and Samuel H. Beverage, in his capacity as Commissioner of the Division of Highways within the West Virginia Department of Transpor-

tation (hereinafter "DOH"). The Grahams filed suit against the Parkers for allegedly causing damage to the Grahams' real and personal property by the negligent, defective and improper construction of a housing development storm water management system which altered the flow of surface water onto the Graham lot. The complaint also alleged that Mr. Parker interfered with the Grahams' free use and enjoyment of their real estate when he maliciously acted to influence DOH to change its plans for addressing the excess surface water problem affecting the Graham property. Additionally, as part of this same suit the Grahams sought a writ of mandamus to compel DOH to construct proper ditching in the right-of-way adjacent to the Graham land. The Grahams contend that the lower court erred by granting summary judgment to the Parkers and to DOH. Following our review of the record and the arguments of the parties in this case, we affirm the order granting summary judgment to DOH. Likewise, we affirm that part of the order granting summary judgment in favor of the Parkers with regard to the malicious interference claim. However, that portion of the order granting summary judgment in favor of Earle and Jean Parker with regard to the negligence claim, including the determination that this claim was time-barred, is reversed.

## I. Factual and Procedural Background

The house and residential lot which is subject to the surface water drainage problems in this case were purchased by Mrs. Graham and her former husband, John Linton, in 1983.[1] By deed dated October 11, 1991, Mrs. Graham acquired her ex-husband's interest in the quarter acre parcel.[2] The east side of the Graham property and the front of the Graham house faces U.S. Route 11 in the Mill Creek District of Berkeley County at Bunker Hill, West Virginia. Running adjacent to the Graham lot on its northern boundary is Parker Drive, from which both the Graham property as well as the housing

development of Earle and Jean Parker known as Southern Cross Estates can be accessed. Southern Cross Estates is located behind and to the west of the Graham property.

When the lot and house were purchased in 1983, Parker Drive was an unpaved gravel road. As part of the development of Southern Cross Estates, the Parkers paved and raised Parker Drive and subsequently in 1991–1992 installed a storm water management system as required by the Berkeley County Planning Commission. The storm water management system as described in a report of an engineering firm retained by the Parkers consisted "of an infiltration trench and a pipe under Parker Drive." The Parkers contracted with Paul Burcham to construct the storm water management system, including the infiltration trench which runs along the Grahams' side of Parker Drive. The engineers retained by the Parkers explained further in their report that the "construction of Parker Drive and Southern Cross Estates directed approximately 2 acres more area of runoff toward the Graham property," and that the infiltration trench was installed to restrict the rate at which the surface water flowed from the housing development onto the Graham lot so as to reduce the amount of water ponding in front of the Graham's house. In further explaining how the infiltration system works, the engineers' report said:

> Water will infiltrate into the soil as it flows toward Route 11. Since the slope of the ditch is very flat, the water moves very slowly and it has time to infiltrate. For most storms the peak rain period is short. The constructed trench keeps this peak flow from reaching the Graham property and give [sic] the water time to infiltrate.

The Grahams said that they first noticed ponding of water on the property in 1990 and 1991 and that they first experienced severe

---

1. A sump pump was in the crawlspace under the house at the time of the 1983 purchase.

2. Spencer Graham, Helen's current spouse, has only an equitable interest in the real estate by virtue of contributions made during the marriage; he also has possessory rights to the property because he resides in the house on the lot with his wife.

flooding in January 1994.[3] The 1994 flood caused water to fill the crawl space under the residence and rise from there into the family room of the house. The Grahams attempted to rectify or minimize the water problems by replacing the sump pump in the house's crawl space and trying to explore alternative solutions with Mr. Parker, Mr. Burcham, the Berkeley County Planning Commission and DOH.

The Grahams lodged their complaint about the water problems with the DOH supervisor located in Berkeley County apparently in late 1998 or early 1999, since the record shows DOH's first response was by letter dated January 13, 1999. This letter stated that DOH intended to install a culvert across Parker Drive, extend an open ditch running north along U.S. Route 11 and install culverts under driveways where needed. However, in a subsequent letter dated February 4, 1999, a DOH district administrator added the qualification that this work would be done on the condition that DOH received drainage easements from property owners whose land would be affected by the additional water flow the proposed ditching would create. The district administrator wrote two additional letters, dated June 16, 1999, and October 1, 1999, in response to inquiries from the Grahams' attorney. Both of these letters explained that potentially affected property owners refused to provide DOH with drainage easements and further noted that DOH did not create the problem of water runoff collecting on the Graham property,[4] since the majority of the water runoff was originating from the housing development behind the Graham residence.

Although the record is not clear, it appears that sometime after the first DOH letter was sent, a petition was circulated, signed by the Parkers and other property owners in the area and submitted to DOH. The petition, in pertinent part, states:

THIS PETITION IS TO THE WEST VIRGINIA DEPARTMENT OF HIGHWAYS.

THIS PETITION IS PERTAINING TO THE PROPOSED CULVERT ACROSS PARKER DRIVE AND EXTENDING TO AN OPEN DITCH APPROX 300 FT LONG ACROSS LOTS AT THIS TIME LOTS 8, 7, 6 AND RUN OFF INTO A CULVERT UNDER RT. 11. SOUTH.

THIS PROPOSED DITCH COULD POSSIBLY ALLEVIATE THE PROBLEM FOR LOT OWN NO9[5] AND CREATE PROBLEMS FOR SEVERAL OTHER LOTS ON BOTH SIDES OF RT11 SOUTH. BUNKER HILL. AND CREATE A GREATER WATER PROBLEM ON THE BUNKER HILL SCHOOL YARD.

THERE ARE OTHER OPTIONS TO ALLEVIATING THE PROBLEM FOR LOT OWNER NO9.

WE REQUEST A MEETING WITH THE DEPARTMENT OF TRANSPORTATION, DIVISION OF HIGHWAYS REPRESENTATIVES AND THEIR ENGINEER.

Not being successful in resolving the runoff problem through DOH, the Grahams initiated legal action against the Parkers, Mr. Burcham[6] and DOH by filing a "Complaint for Writ of Mandamus and Damages" in the Berkeley County Circuit Court in mid-November 1999. The complaint alleged that the Parkers were responsible for damage to the Grahams' real and personal property due to the Parkers' negligence in constructing an infiltration system which did not adequately restrict the surface water flowing from the housing development onto the Graham prop-

---

**3.** There are allusions in the record to an increase either in the amount or velocity of water run-off with the suggestion that this arises from the development of additional home sites in the housing complex.

**4.** The record includes documentation that no significant construction or improvement to U.S. Route 11 had been performed by DOH in the last fifty years and that DOH repaved this road in 1994.

**5.** Lot number 9 is a reference to the Graham property.

**6.** By an agreed order of dismissal dated March 5, 2001, all claims against Mr. Burcham were dismissed with prejudice, and he is not a party to this appeal.

erty. Additionally, the complaint charged Earle Parker with intentionally interfering with the Grahams' free use and enjoyment of real estate by maliciously initiating a petition requesting DOH delay implementing plans intended to alleviate the problem. As part of this same suit, a writ of mandamus was sought against DOH to compel the agency to perform its duty to maintain the highways of the state by constructing proper ditching in the right-of-way adjacent to the Graham land.

The Parkers moved for summary judgment on December 28, 2000. Thereafter on January 17, 2001, DOH moved the lower court to dismiss the mandamus petition for failure to state a claim upon which relief can be granted,[7] or for judgment on the pleadings or alternatively for summary judgment.[8] As previously noted, the circuit court granted summary judgment for the Parkers and DOH by separate orders dated April 5, 2001. Subsequently, the Grahams filed motions to amend or alter the judgment orders pursuant to Rule 59(e) of the Rules of Civil Procedure. The circuit court denied the motions in both instances: by order dated May 14, 2001, the lower court sustained the summary judgment in favor of the Parkers; by order dated June 12, 2001, summary judgment for the DOH was upheld. This appeal followed.

## II. Standard of Review

As this Court explained in syllabus point one of *Wickland v. American Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998),

> [t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W.Va.R.Civ.P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Consequently, in the case sub judice we look to the standard of review applicable to summary judgments.

A de novo standard is applied to our review of summary judgments. Syl. Pt.

1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Our review is guided by the longstanding and often quoted premise of syllabus point three of *Aetna Casualty and Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963): "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Id.* at 160, 133 S.E.2d at 771. We further note that in our examination of the circuit court's determination of whether there is a genuine issue for trial, this Court draws any allowable inference from the facts in the light most favorable to the losing party. *Masinter v. WEBCO*, 164 W.Va. 241, 242, 262 S.E.2d 433, 435 (1980).

This case also requires us to examine whether the dismissal of the petition of mandamus, which resulted from the lower court's granting summary judgment in favor of DOH, was appropriate. Thus we also set forth the standard for review of decisions involving writs of mandamus. In reliance on syllabus point one of *Staten v. Dean*, 195 W.Va. 57, 464 S.E.2d 576 (1995), we have stated that this Court undertakes de novo review of a circuit court decision regarding an extraordinary writ of mandamus. *State ex rel. Catron v. Raleigh County Bd. of Educ.*, 201 W.Va. 302, 303–04, 496 S.E.2d 444, 445–46 (1997). When conducting our review of a mandamus proceeding, we consider whether the elements which must coexist to issue a writ of mandamus are present: "(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. Pt. 2, in part, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

## III. Discussion

### A. Assignment of Errors Involving DOH

The Grahams argue that the lower court erred as a matter of law in finding both

---

**7.** W.Va. R.Civ.P. 12(b)(6).

**8.** W.Va. R.Civ.P. 12(c).

that DOH had no legal obligation to establish and maintain proper drainage within the right-of-way on the state maintained highway of U.S. Route 11, and for the alternative reason that West Virginia Code § 55–2–6a (1983) (Repl.Vol.2000), commonly referred to as the statute of repose, foreclosed the claim against the agency.

■ We have recognized that our common law, statutes [9] and constitution [10] guarantee that property will not be taken as a result of state action without just compensation. *State ex rel. Henson v. West Virginia Dept. of Transp., Div. Of Highways,* 203 W.Va. 229, 232, 506 S.E.2d 825, 828 (1998). The manner by which the owner of real property damaged by DOH may seek compensation was summarized in syllabus point one of *State ex rel. Griggs v. Graney,* 143 W.Va. 610, 103 S.E.2d 878 (1958) as follows:

> If a highway construction or improvement results in probable damage to private property without an actual taking thereof and the owners in good faith claim damages, the State Road Commissioner [DOH] has the statutory duty to institute proceedings within a reasonable time after completion of the work to ascertain damages, if any, and, if he fails to do so, after reasonable time, mandamus will lie to require the institution of such proceedings.

*See also* W.Va.Code § 54–2–14 (1981) (Repl. Vol.2000). Consequently, a writ of mandamus is the proper method by which an owner of real property damaged by actions of DOH may seek to compel DOH to institute eminent domain proceedings. In such cases, a writ of mandamus would issue if the three elements enumerated in *Kucera* were present.

■ While mandamus will lie to compel DOH to begin eminent domain proceedings, the Grahams are seeking a writ of mandamus to compel DOH to do something entirely different—to carry out a specific surface water drainage project. In its April 5, 2001, order, the lower court specifically found that DOH does not have a clear legal duty to perform the action requested by the Grahams.[11] We likewise do not find that DOH has a "clear legal duty" to carry out the Graham request and note furthermore that courts are not in the position to compel performance of the same. If anything, quite the contrary is true. As we said in *Pittsburg Hydro–Electric Co. v. Liston,* 70 W.Va. 83, 73 S.E. 86 (1911), "[w]hether it is expedient, appropriate, or necessary to provide for a public service of a particular kind or character is a legislative, not a judicial, question." *Id.* at Syl. Pt. 2. The Legislature has entrusted such responsibility with regard to the state road system to the commissioner of highways. *See* W.Va.Code §§ 17–2A–1 to – 22 (Repl.Vol.2000).

Accordingly, we find that the Grahams failed to meet all *Kucera* prerequisites for the issuance of a writ of mandamus and, therefore, we affirm the circuit court's grant of summary judgment involving DOH.[12] In so finding, we do not reach the questions of whether the circumstances are such that the Grahams might amend their complaint to comport with the previously outlined provisions of *State ex rel. Griggs v. Graney* or whether such effort would be timely.

### B. Assignment of Errors Involving Earle and Jean Parker

As to the two tort claims involving the Parkers,[13] the Grahams argue that the trial

---

**9.** W.Va.Code §§ 54–1–1 to 54–2–21· (Repl.Vol. 2000).

**10.** W.Va. Const., art. III, § 9.

**11.** As stated in the complaint, which does not appear from the record to have been amended, the sole relief sought by the Grahams with regard to DOH is: "That the Court enter an order in the form of a mandamus against the Division of Highways requiring it to complete the promised construction of proper ditching and drainage to carry off the surface water which is being blocked and ponded upon Plaintiffs' real estate by Route 11."

**12.** Having concluded that summary judgment was appropriate on other grounds, we find it unnecessary to examine the issue raised concerning the statute of repose.

**13.** Although reference is made in the Grahams' appellate briefs to a claim sounding in nuisance, the complaint itself does not contain such an allegation nor does the record accompanying this appeal show that any effort was made to amend the complaint to include a nuisance claim. Relevant portions of the Parkers' summary judgment order recites that the Grahams filed "suit seeking damages against the Parkers for damage to their

court was incorrect in granting summary judgment in favor of the Parkers based on the finding that no genuine issues of material fact exist. The Grahams also contend that the trial court erred in finding that their cause of action for negligence was time-barred by the provisions of W.Va.Code § 55–2–12 (1959) (Repl.Vol.2000).

■ With regard to the tortious interference with property claim, the Grahams specifically argue that the lower court incorrectly limited its consideration of evidence regarding malice to the contents of the petition sent to DOH. In so doing, the Grahams contend that the lower court incorrectly excluded any inferences that may be drawn from the overall course of conduct of the Parkers, including their state of mind and motivation in filing the petition. The Parkers maintain that their actions merely constituted an exercise of their constitutionally protected right to petition the government for redress.

■ This Court initially dealt with the constitutional right to petition the government in *Webb v. Fury*, 167 W.Va. 434, 282 S.E.2d 28 (1981). *Webb* involved a defamation action bought by a coal company against Webb for sending communications to various federal agencies claiming that the coal company was in violation of surface mining and clean water laws. After finding that the right to petition the government is protected under both federal and state constitutions,[14] we concluded in syllabus point four of *Webb* that "[t]he people's right to petition the government for a redress of grievances is a clear constitutional right and the exercise of that right does not give rise to a cause of action for damages." *Id.* at 435, 282 S.E.2d at 30. Thereafter, in *Harris v. Adkins*, 189 W.Va. 465, 432 S.E.2d 549 (1993), this Court clarified the extent of constitutional protection afforded the right to petition the government when we stated in the syllabus, in part, that:

real and personal property and for intentional interference with plaintiffs' free use and enjoyment of their real estate" by conspiring "to defeat plaintiffs' efforts to resolve the flooding ...." We will rely on the order of the lower court as to the claims levied against the Parkers.

[t]he right to petition the government found in Section 16 of Article III of the West Virginia Constitution is comparable to that found in the First Amendment to the United States Constitution. It does not provide an absolute privilege for intentional and reckless falsehoods, but the right is protected by the actual malice standard of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

The Supreme Court in *New York Times* found that "actual malice" is established when a statement is made "with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 280, 84 S.Ct. 710.

The court below recognized the constitutional protection afforded the right to petition the government, including the qualification imposed by *Harris* regarding actual malice, as evidenced from the sixth enumerated point in the Parker summary judgment order which reads:

The plaintiffs have offered no evidence that the Parkers intentionally or recklessly spread falsehoods to the DOH or other governmental agencies to injure the plaintiffs, or that they spread any "falsehoods" to DOH whatsoever. Accordingly, without an intentionally or recklessly false statement, there has been no "actual malice" proven by the plaintiffs ....

The Grahams' contend that the long-standing disputes between the Grahams and Parkers raised the question of whether the Parkers were motivated by actual malice when they filed the petition. However, the Grahams fail to point us to any false statements made by either Mr. or Mrs. Parker to support such an inference. Without the demonstration of actual malice by a false or recklessly made statement, the activity of either Mr. or Mrs. Parker with regard to the petition are constitutionally protected. We find that the lower court correctly applied the law to reach its conclusion that no actual malice

14. *See* U.S. Const. amend. I; W.Va. Const. art. III, § 16.

was demonstrated by the Grahams in the statements contained in the petition or otherwise. As a result, we agree with the circuit court's conclusion that there was no genuine issue as to any material fact regarding this claim. Accordingly, we affirm the circuit court's dismissal of the tortious interference claim.

▮ Turning our attention to the negligence claim, we note that the lower court's summary judgment order included the finding that the Grahams provided no evidence that the storm water management system caused or contributed to the flooding problems the Grahams experienced. As we held in syllabus point six of *Aetna Casualty and Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963),

[a] party who moves for summary judgment has the burden of showing that there is no genuine issue of fact and any doubt as to the existence of such issue is resolved against the movant for such judgment.

It is not until this initial burden is met that the burden of production shifts to the nonmoving party. Syl. Pt. 3, *Jividen v. Law,* 194 W.Va. 705, 461 S.E.2d 451 (1995). Consequently, our first question in reviewing the summary judgment determination is whether the Parkers met their burden of demonstrating the absence of a genuine issue of material fact.

To address this question, we return to the summary judgment order which contains the following additional findings regarding the negligence claim:

7. A storm water management system was installed on property adjacent to the plaintiffs' property in 1991 or 1992.

8. The plaintiff Helen Graham first observed ponding on her property in 1990 or 1991. Further, she experienced severe flooding on her property in January 1994, following a severe storm, which caused water to back up under the house and rise into the family room.

We do not agree with the lower courts conclusion that these findings establish that no genuine issue of material fact exists as to the negligence of the Parkers with regard to the storm water management system. More than one reasonable conclusion can be drawn from these findings, including that the storm water management system, which the Parkers installed to alter the drainage of surface water flowing from their housing development, contributed to the flooding in 1994 of the Graham's property.

▮ Also relevant to our discussion here is this Court's adoption in *Morris Associates, Inc. v. Priddy,* 181 W.Va. 588, 383 S.E.2d 770 (1989), of the rule of reasonable use in cases involving diversion of surface water onto another's property. We defined this rule and its application in syllabus point two, in part, of *Morris Associates* in the following manner:

Generally, under the rule of reasonable use, the landowner, in dealing with surface water, is entitled to take only such steps as are reasonable, in light of all the circumstances of relative advantage to the actor and disadvantage to the adjoining landowners, as well as social utility. Ordinarily, the determination of such reasonableness is regarded as involving factual issues to be determined by the trier of fact.

We elaborated on the reasonable use standard as applied to changes made to the natural flow or drainage of surface water in syllabus points six and seven of *Whorton v. Malone,* 209 W.Va. 384, 549 S.E.2d 57 (2001) in which we said:

6. When a plaintiff alleges that a defendant has caused or allowed surface water to damage the plaintiff, the mere fact that the water does not originate on the land of the defendant, does not, in and of itself, make the defendant's conduct "reasonable" under the test established in *Morris Assocs., Inc. v. Priddy,* 181 W.Va. 588, 383 S.E.2d 770 (1989).

7. In the absence of a valid waiver or other contractual arrangement, altering the natural flow or drainage of surface water upon one's land such that the water causes damage to another party is not "reasonable" merely because the person altering the flow of water sought to protect his or her own property and did not intend to harm any other party.

While there may be instances when the determination of reasonableness may be made at the summary judgment stage, this is not such a case. As with questions of negligence generally,[15] questions of reasonable use present issues of fact for jury determination when the evidence pertaining to reasonable use is conflicting, or even undisputed, as long as reasonable persons may draw different conclusions from that evidence.[16]

Based upon the foregoing, we find that the circuit court erred as a matter of law not only in shifting the burden of persuasion to the Grahams but also in dismissing the negligence claim based on the lack of any genuine issue of a material fact. Nonetheless, remand of the negligence claim for further proceedings is dependent upon our review of the final error assigned: whether the court below correctly concluded that the negligence claim was time-barred by the relevant statute of limitations.

The statute of limitations applicable to a cause of action involving tort liability is West Virginia Code § 55-2-12.[17] Syl. Pt. 1, *Family Savings and Loan, Inc. v. Ciccarello*, 157 W.Va. 983, 207 S.E.2d 157 (1974). The statutory limitation for filing claims involving damage to property is two years. W.Va. Code § 55-2-12(a); *State ex rel. Ashworth v. Road Commission*, 147 W.Va. 430, 128 S.E.2d 471 (1962).

Generally, the time period within which a cause of action for tort begins is when the injury occurs. *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992). However, there are numerous exceptions to this general rule. The Grahams assert that one of these exceptions supports their claim that the statute of limitations has not expired in the case sub judice. Relying on the principles set forth in *Handley v. Town of Shinn-*

ston, 169 W.Va. 617, 289 S.E.2d 201 (1982), the Grahams argue that because the negligence of the Parkers is a continuing breach of duty causing a continuing or repeated injury the statute of limitations does not begin to run until the date of the last injury.

In the *Town of Shinnston* case, the Town had installed a water transmission line on the Handley property. When the Handleys noticed that the water line was leaking they notified the Town. The Town's efforts to repair the leak were inadequate and the leaking continued, as did the damage to the Handley property. This Court concluded in *Town of Shinnston* that "'[w]here a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from the date of the last injury, or when the tortious overt acts cease.'" *Id.* at 619, 289 S.E.2d at 202 (quoting 54 *C.J.S.* Limitations of Actions § 169).

Countering this argument, the Parkers contend that this Court's holding in *Hall's Park Motel, Inc. v. Rover Construction, Inc.*, 194 W.Va. 309, 460 S.E.2d 444 (1995), fully supports the lower court's conclusion that the statute of limitations had expired on the negligence claim because the action first accrued with the construction of the infiltration system. In *Hall's Park Motel*, the plaintiff complained about the negligent construction of a lift station, which caused damage to the plaintiff's real property. This Court determined in *Hall's Park Motel* that although the construction caused continuous, increased injuries to the plaintiff's property, the cause of the injuries was a "discrete and completed act of negligent commission, not [ ] a continuing negligent act of omission . . . ." *Id.* at 313, 460 S.E.2d at 448. We subsequently held in syllabus point two of *Hall's Park Motel* that "[w]here a plaintiff sustains a noticeable injury to property from

---

**15.** *See* Syl. Pt. 5, *Hatten v. Mason Realty Co.,* 148 W.Va. 380, 135 S.E.2d 236 (1964).

**16.** The gravamen of the complaint in this case apparently is that once water is collected into the water management system—an artificial, manmade watercourse—the water then disperses into the soil of, or onto the surface of, the Graham property. In light of this, we do not intend here to limit the theories under which the Grahams may prove and plead their case.

**17.** The portion of West Virginia Code § 55-2-12 relevant to the negligence claim presented in this case follows:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property . . . .

a traumatic event, the statute of limitations begins to run and is not tolled because there may also be latent damages arising from the same traumatic event." *Id.* at 310, 460 S.E.2d at 445. The Parkers maintain that the noticeable injury in the instant case occurred at least as early as 1991 when the storm water management system was constructed. Because this construction involved a singular and complete act which is alleged to be causing continuing damage to the Graham property, the Parkers argue that no exception to the two-year statute of limitations is applicable.

 A fair reading of the complaint and the other documents in this case reveals that the Grahams are not complaining solely about the "traumatic event" of the construction of the infiltration system. Rather, the thrust of the Grahams' complaint is that the construction of the infiltration system as well as the continuing wrongful conduct of the Parkers in negligently failing to take action with regard to correcting the alleged inadequacies of that system is causing continuing injuries to their real and personal property. As such, we find that the present case presents a much more comparable situation to that found in the *Town of Shinnston* case. We recognize that *Town of Shinnston* was a per curiam opinion which may raise doubt in some minds as to the validity in this jurisdiction of the continuing tort exception to the statute of limitations. To dispel any such doubts, we hereby hold that where a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease.

Applying this holding to the instant case, we do not find the negligence claim time-barred because the alleged negligence of the Parkers complained of by the Grahams constitutes continuing wrongful conduct from which continuing injuries emanate. Accordingly, we reverse the decision of the lower court regarding the statute of limitations.

## IV. Conclusion

Based upon the above-stated reasons, we affirm the April 5, 2001, order of the Circuit Court of Berkeley County granting summary judgment in favor of DOH. With regard to the April 5, 2001, order of the Circuit Court of Berkeley County granting summary judgment for the Parkers, we affirm that portion of the order dismissing the intentional interference with property claim; however, we reverse those parts of the order which served to dismiss the negligence claim, and we remand the case for further proceedings.

Affirmed, in part, reversed in part, and remanded.