**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**JAMES P. CAMPBELL,**
**Defendant Below, Petitioner**

**FILED**

**June 7, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  12-0130 (Jefferson County No. 08-C-223)**

**GLEN POE,**
**Plaintiff below, Respondent**

**and**

**STEVEN D. FOSTER,**
**Defendant Below, Petitioner**

**vs.)  12-0165 (Jefferson County No. 08-C-223)**

**GLEN POE,**
**Plaintiff Below, Respondent**

## MEMORANDUM DECISION

In this consolidated appeal, the petitioners, James P. Campbell, Esq., and Steven D. Foster (collectively referred to as "the petitioners"), appeal from an order entered in the Circuit Court of Jefferson County, West Virginia, on January 5, 2012, denying their respective motions to alter or amend an order granting summary judgment in favor of the plaintiff below and respondent herein, Glen Poe.[1]  The primary issue is whether the circuit court committed error in granting summary judgment against the petitioners and finding that they personally guaranteed payment of a $100,000.00 promissory note to the respondent.

Upon our review of the parties' arguments, the appendix record, and the pertinent authorities, we affirm the circuit court's order.  Moreover, because this case does not present a new or significant issue of law, we find this matter to be proper for disposition pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

The relevant facts giving rise to the instant proceeding are as follows:  In February,

---

[1]The petitioners separately filed appeals from the circuit court's January 5, 2012, order and each appeared before this Court *pro se*.

1

2007, Petitioner Campbell, who was then the respondent's attorney, approached the respondent about investing in a restaurant venture in Charles Town, West Virginia. The respondent loaned the project the sum of $100,000.00 for the purpose of completing renovations to the restaurant property and under certain conditions. A promissory note was executed by the petitioners as personal guarantors on the loan.

Not long after the restaurant opened for business, it closed, and the respondent instituted a civil action in which he alleged a breach of contract claim involving the promissory note[2] based upon the failure to make timely installment payments thereon.[3] Attached to the respondent's Amended Complaint was a copy of a promissory note dated August 29, 2007, which provided, in relevant part, that, for value received, "210 Liberty Street Holdings, LLC[,][4] with the personal guarantees of James P. Campbell, Michael E. Briel and Steven D. Foster . . . promises to pay to GLEN POE . . . the principal sum" of $100,000.00, plus interest from August 29, 2007,[5] at the rate of twelve percent per annum.[6]

---

[2]The respondent also alleged claims of fraud; negligent legal counsel and breach of fiduciary duties; and violations of the West Virginia Wage Payment and Collection Act. The respondent's Amended Complaint was filed against the petitioners and various other defendants; however, the instant appeal involves only Petitioners Campbell and Foster and the promissory note claim. The underlying allegations giving rise to the respondent's other claims, as set forth in the Amended Complaint, are not relevant to this appeal and will not be recited herein.

[3]Although it appears undisputed that four payments on the promissory note were made in the amount of $833.00, as well as a $150.00 late payment fine, timely installment payments on the note were not otherwise made.

[4]We observe that the promissory note identifies "210 Liberty Street Holdings, LLC" as the maker of the note. However, our review of the appendix record does not otherwise identify an entity by that name. Rather, "210 West Liberty Holdings, LLC" is referred to as the maker of the promissory note both in pleadings filed below and in proceedings in which that entity filed for bankruptcy in the United States Bankruptcy Court for the Northern District of West Virginia. The petitioners do not acknowledge this apparent misidentification of the maker of the promissory note nor do they raise it as a ground upon which the note should be held unenforceable.

[5]The terms of the promissory note at issue consisted of three numbered pages in length. At the bottom of the third page appeared the signature line for "210 Liberty Street Holdings, LLC," [sic] [*see supra* n. 4] signed by "Michael E. Briel" as "Its: Member." Numbered pages four, five and six each consisted of only one signature line with the

(continued...)

2

(Footnotes added).

A jury trial was commenced on May 10, 2011. During the course of the trial, the petitioners admitted that they personally guaranteed a $100,000.00 promissory note payable to the respondent. Furthermore, Michael Briel, who, along with the petitioners, personally guaranteed the promissory note (but who was not named as a defendant in this case), testified that the note attached to the Amended Complaint and presented at trial was not the promissory note that he signed. Specifically, Mr. Briel testified that the promissory note that he signed identified an individual by the name of Lou Athey as an additional guarantor.[7] However, the August 29, 2007, promissory note upon which the respondent sought payment at trial did not include Mr. Athey as a guarantor. After the jury returned a verdict on the promissory note and fraud claims in favor of the respondent, a mistrial was granted during

---

[5](...continued)
accompanying signatures of "James P. Campbell," Michael E. Briel," and "Steven D. Foster," respectively, as personal guarantors. It is undisputed that the signature of the respondent, as the noteholder, was not required on the promissory note. The respondent testified that he was not present when any of the guarantors signed the promissory note.

[6]The promissory note further provides, in relevant part, as follows:

> Noteholder may exercise this option to accelerate during any default by Maker, regardless of forebearance. . . . The remedies of Noteholder shall be cumulative and concurrent and may be pursued singly, successively, or together, against Maker, at Noteholder's discretion and may be exercised as often as the occasion therefor shall arise.
>
> . . .
>
> Maker and all endorsers, guarantors, and other parties primarily and secondarily liable on this Note, if any, . . . and each . . . agrees [sic] that the same may be made without the joinder of any of the parties executing this Note and without the joinder of the endorsers or guarantors of, or other parties primarily or secondarily liable upon this Note.

[7]The promissory note that Mr. Briel claimed he signed has never been produced in this case.

the punitive damages phase of the trial.[8]

A re-trial was scheduled for November 15, 2011. During the course of a pre-trial conference conducted on October 31, 2011, the respondent moved for summary judgment on the promissory note claim.[9] In support thereof, he relied on the petitioners' admissions at trial that they personally guaranteed the $100,000.00 note. Additionally, the respondent presented an email from a paralegal in Petitioner Campbell's law firm addressed to Mr. Briel and Foster-Herz, a corporation of which Petitioner Foster was President,[10] attaching a copy of the promissory note at issue. The email stated as follows: "Jim and Steve's signatures on the promissory note."[11] The respondent argued that there was no dispute that the petitioners' signatures were on the promissory note attached to the email and that they guaranteed the note under the terms set forth therein. However, the petitioners argued that the promissory note presented by the respondent at trial was not the promissory note Mr. Briel signed; that the promissory note attached to the above-described email did not contain a signature on behalf of 210 West Liberty Holdings, LLC; and that, under the statute of frauds, the

---

[8]It appears that the jury was confused about the scope of compensatory damages it awarded during the first phase of the trial.

[9]Pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, a motion for summary judgment "shall be served at least 10 days before the time fixed for the hearing." We note that the respondent orally moved for summary judgment and, thus, did not serve the petitioners with a written motion at least ten days prior to the October 31, 2011, hearing. However, notwithstanding the petitioners' representations at oral argument before this Court that they contemporaneously objected to the respondent's oral motion on the ground that they were not provided notice of same, our review of the October 31, 2011, hearing transcript reveals that no such objection was made. To the contrary, the petitioners vigorously argued against the motion on the merits and in no way argued or otherwise suggested that they were ill-prepared to do so. This Court has repeatedly stated that it "will not consider, for the first time on appeal, a matter that has not been determined by the lower court from which the appeal has been taken." *In re Michael Ray T.*, 206 W.Va. 434, 444, 525 SE.2d 315, 325 (1999).

[10]Foster-Herz, Inc. was a named defendant in the respondent's Amended Complaint, and was identified therein as, inter alia, a Virginia corporation doing business in Jefferson County, West Virginia, and which "provided bookkeeping, accounting and tax services to 210 West Liberty Holdings, LLC[,] and provided construction and renovation services to C.W. Tiffins [the aforementioned restaurant] by and through its President Steven Foster."

[11]It is undisputed that "Jim" refers to Petitioner Campbell and "Steve" refers to Petitioner Foster.

petitioners were not bound to repay the loan.

In an order entered November 9, 2011, the circuit court granted the respondent's motion for summary judgment, relying on the following: Petitioner Campbell's admissions at trial that "he signed a promissory note guarantee for $100,000 payable to the [respondent] plus twelve percent interest upon which he has not paid his personal guarantee upon the default of the borrower[;]" the above-described "email with attached Promissory Note signed by [Petitioners] Campbell and Foster[,]" with the email expressly stating, "'Here are Jim and Steve's signatures on the promissory note[;]'"[12] and Petitioner Campbell's closing argument during the punitive damages phase of the May 2011 trial, during which he "argued before the Jury . . . that he 'never shied away' from his guarantee of the Note" and that the respondent "has a note for $100,000 with 12 percent interest." The circuit court concluded "that there is no genuine issue of material fact remaining upon the personal guarantees of [Petitioners] Campbell and Foster upon the Note. [Petitioners] Campbell and Foster are personally obligated upon the Note and indebted under the terms of said Note . . . previously admitted as Exhibit 10[13] . . . ."[14] (Footnote added).

Thereafter, the petitioners filed motions to alter or amend the November 9, 2011, summary judgment order. The circuit court denied the petitioners' respective motions by order entered January 5, 2012. In that order, the circuit court found, *inter alia*, that, at various times throughout the litigation of this matter (including during the May 2011 trial), the petitioners admitted that "they personally guaranteed performance under a Note[,]" and that, during the bankruptcy proceedings in which the petitioners were seeking to reorganize

---

[12]As the circuit court explained in its summary judgment order, during the May 2011 trial, it was Petitioner Campbell who originally sought to introduce the email with the attached promissory note in order to "rebut the testimony of witness Michael Briel, Esq. that tended to support the [respondent's] fraud claim . . . ." However, the respondent objected to the admission of this evidence at trial because "it had not been produced as required by subpoena . . . ." The objection was sustained and the email with attached promissory note "was marked for identification but not admitted as an exhibit."

[13]Exhibit 10 refers to the promissory note presented at trial and at issue herein. Notwithstanding the petitioners' argument on appeal that the circuit court failed to indicate upon which note the petitioners are liable, the summary judgment order clearly indicated that the petitioners are personally obligated upon the August 29, 2007, promissory note presented at the May 2011 trial.

[14]The circuit court further granted the respondent's "election to non-suit his remaining claims against [the petitioners] without prejudice pending any appeal of this Judgment . . . ."

210 West Liberty Holdings, they "assured a Bankruptcy Judge that they were guarantors on the Note[.]" The circuit court further found that, during the May 2011 trial, Petitioner Campbell admitted that he "signed a promissory note guarantee" for $100,000.00 payable to the respondent at a twelve percent interest rate and that he has not paid the personal guarantee;[15] that "there was a meeting of the minds as to [the petitioners'] own personal guarantees which is all that is relevant for their liability[;]" and that the promissory note provides for the petitioners' "continuing legal obligations to pay on the Note regardless and independent of whether [Louis] Athey or anyone else executed or failed to execute on the Note . . . ." This appeal followed.

This Court's standard of review of the circuit court's January 5, 2012, order denying the petitioners' motions to alter or amend the summary judgment order, "'made pursuant to W.Va.R.Civ.P. 59(e), is the same standard that would apply to the underlying judgment upon

---

[15]The circuit court also relied on Petitioner Campbell's closing argument during the punitive damages phase of the May 2011 trial, in which he stated to the jury as follows:

> This is about money. Glen Poe has a note for $100,000 with 12 percent interest. . . . [A]s I understand Mr. Poe's claim, he unequivocally loaned $100,000. Mr. Hammer [the respondent's attorney] read to you my answer where I admitted signing the guarantee.
>
> Why did I admit in papers to this Court [that] I signed the guarantee because I did. I never lied about that. I never shied away from that. I never said I didn't.
>
> Because Steve Foster from day one, the first day that we were asked to respond to the complaint, said that we signed the note.
>
> I hope you didn't hold it against me that the process allowed other issues to come to the forefront because I didn't act with fraud or malice or oppression I don't think in responding to the note because I admitted that I guaranteed it.
>
> But the point is your verdict already will compensate Mr. Poe for the full amount of the note plus attorney fees, because you can look at the note, it has the award for attorney fees, and the Court has an obligation to award those attorney fees . . . .

which the motion is based and from which the appeal to this Court is filed.' Syl. Pt. 1, *Wickland v. American Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998)." Syl. Pt. 1, in part, *Graham v. Beverage*, 211 W.Va. 466, 566 S.E.2d 603 (2002). Therefore, in the case *sub judice*, we look to the standard of review applicable to summary judgments. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." *Id.*, at syl. pt. 4.

On appeal, the petitioners argue that summary judgment was improperly granted in favor of the respondent because, at the very least, there is a genuine issue of material fact as to whether there was a valid written and signed guarantee reflecting a meeting of the minds as required under the statute of frauds. Alternatively, the petitioners contend that summary judgment should have been granted in their favor. However, the respondent argues that the circuit court did not err in concluding that there is no genuine issue of material fact that the petitioners are personally obligated upon the promissory note presented at trial. We agree.

Upon *de novo* review of the evidence of record, this Court is of the opinion that the record taken as a whole could not lead a rational trier of fact to find for the petitioners and that the circuit court properly granted summary judgment in favor of the respondent. *Id.*, at 190, 451 S.E.2d at 756, syl. pts. 1 and 4. The petitioners admitted during oral argument before this Court that they personally guaranteed a $100,000.00 promissory note payable to the respondent at twelve percent interest. Similarly, as discussed more fully above, during his own testimony and closing argument in the May 2011 trial, Petitioner Campbell–who was in the unique position of *pro se* litigant, witness, and attorney–admitted "signing the guarantee" and that he "never lied about that . . . [or] shied away from that." Furthermore, the email sent from Petitioner Campbell's paralegal to the other two guarantors, Petitioner Foster and Mr. Briel, attached and specifically referred to the petitioners' signatures on the August 29, 2007, promissory note at issue.[16] It is undisputed that the petitioners' signatures

---

[16]The petitioners argue that because Mr. Briel testified that he signed a promissory note which included one Lou Athey as an additional guarantor, an issue of material fact exists as to whether the August 29, 2007, promissory note at issue is enforceable. As indicated above, the evidence in this case establishes that the circuit court did not err in granting summary judgment in favor of the respondent on this issue. Additionally, we observe that, according to the record on appeal, Mr. Briel's aforementioned testimony is directly contrary to a finding set forth in a Memorandum Opinion entered in federal bankruptcy court on May 29, 2009. Although not relied upon in the circuit court's January

(continued...)

appear on the note. Based upon this evidence, therefore, summary judgment was properly granted.[17]

For the foregoing reasons, we affirm the January 5, 2012, order of the Circuit Court of Jefferson County denying the petitioners' motions to alter or amend the order granting summary judgment in favor of the respondent.

Affirmed.

**ISSUED**: June 7, 2013

**CONCURRED BY:**

_____

[16](...continued) 5, 2012, order denying the petitioners' motion to alter or amend, we note that the Memorandum Opinion–in which the bankruptcy court determined that the bankruptcy case involving 210 West Liberty Holdings, LLC would be converted from Chapter 11 to Chapter 7– stated as follows: that "Mr. Athey refused to sign the personal guarantee on Mr. Poe's $100,000 note" and further, that "[a]lthough Mr. Poe loaned the Debtor [i.e., 201 West Liberty Holdings, LLC] $100,000, the conditions he placed on the loan were not being met. For example, Mr. Athey refused to guarantee the note . . . ." On appeal, the petitioners suggest that evidence relating to the bankruptcy proceedings was not presented by the respondent at the summary judgment stage and was therefore improperly considered by the circuit court in its order denying the petitioners' motions to alter or amend. However, our review of the record reveals that the petitioners failed to make such an argument below. Accordingly, this Court will not consider this argument for the first time on appeal. *See Michael Ray T.*, 206 W.Va. at 444, 525 SE.2d at 325.

[17]The petitioners also argue that the Honorable David H. Sanders should have been disqualified from this case because he demonstrated bias against the petitioners and in favor of the respondent. The record and the arguments of the petitioners reveal that they previously moved for the disqualification of Judge Sanders based, *inter alia*, on what they perceived to be his bias against them. By Administrative Order of this Court entered November 18, 2011, it was concluded that the evidence set forth in the motion for disqualification was insufficient to warrant disqualification. Furthermore, Judge Sanders was directed to continue to preside over this case.

Finally, we have reviewed the remaining assignments of error raised by the petitioners and, finding them to be without merit or otherwise resolved by virtue of our decision herein, we decline to address them.

8

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II