655 S.E.2d 119

**Mark ROBERTS, Plaintiff Below, Appellant**

v.

**WEST VIRGINIA AMERICAN WATER COMPANY, a West Virginia Corporation; Kanawha County Commission; E.L. Robinson Engineering Co., a Virginia Corporation; and Famco Contracting, Inc., a West Virginia Corporation, Defendants Below, Appellees.**

No. 33326.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 9, 2007.

Decided Nov. 8, 2007.

Concurring Opinion of Justice Starcher Dec. 26, 2007.

Jennifer Narog Taylor, Charleston, WV, for Appellant.

Mark E. Troy, Jason A. Winnell, Bailey & Wyant, P.L.L.C., Charleston, WV, for Appellee, West Virginia–American Water Company.

David V. Moore, Paul L. Weber, Moore & Weber, P.L.L.C., Charleston, WV, for Appellee, E.L. Robinson Engineering Co.

Adam M. Barnes, Paul J. Walsh, III, Walsh, Collin & Blackmer, P.C., Pittsburgh, PA, for Appellee, Famco Contracting, Inc.

ALBRIGHT, Justice:

This is an appeal by the plaintiff below, Mark Roberts, (hereinafter referred to as "Appellant") from the June 10, 2005, and June 29, 2006, orders of the Kanawha County Circuit Court granting summary judgment in favor of the defendants below, West Virginia American Water Company, E.L. Robinson Engineering Co. and Famco Contracting, Inc. (hereinafter referred to collectively as "Appellees"),[1] on statute of limitations

---

1. An early settlement was reached with the Kanawha County Commission which was initially named as a defendant in Appellant's complaint.

grounds in a property damage suit. On appeal to this Court, Appellant maintains that the lower court incorrectly found that his suit was not timely filed because both the continuous tort doctrine and the discovery rule tolled the running of the statute in this case. Upon completion of review of the arguments of the parties, the record presented for appellate consideration, and the pertinent authorities, we affirm the ruling of the circuit court.

## I. Factual and Procedural Background

The underlying civil action involves a claim of property damage occurring on Appellant's twenty-acre tract of land [2] in Kanawha County, West Virginia, which allegedly was caused by the installation of water lines in 1999. The waterline installation project was undertaken in 1998 by the Kanawha County Commission through the Regional Development Authority of Charleston in conjunction with West Virginia American Water Company (hereinafter referred to individually as "WVAW"). WVAW contracted with E.L. Robinson Engineering Co. (hereinafter referred to individually as "ELRE") and Famco Contracting, Inc. (hereinafter referred to individually as "Famco") to engineer, design and/or install the water lines.

The water lines were installed parallel to a gravel road on Appellant's property. He maintains that during the course of the construction project the bottom of a concrete trough at the foot of his driveway was broken. Additionally, Appellant claims that a substantial portion of the hillside below the road was cut, moved and shifted during the installation causing the toe [3] of the hillside to be significantly disturbed. Prior to this disturbance, Appellant said he never experienced any slips or landslides on or near his property. He asserts that the erosion of his road over time is the direct result of the damage done to the toe of the hill during the waterline installation project.

Appellant testified during a deposition that within three weeks of the completion of the waterline project he noticed that a slip had developed along his road. Appellant said he also noticed slips in March and October 2000. The first major slip on Appellant's property happened on April 15, 2002, at which time travel on his gravel roadway became hazardous for trucks and larger vehicles. According to a phone log maintained by Appellant, Appellant called WVAW, Famco and ELRE on April 15 and April 18, 2002. During these conversations, Appellant advised the company representatives of the slippage and requested that his property be inspected and repaired. Two weeks thereafter another major slip occurred on Appellant's property.

In June 2002, WVAW hired Triad Engineering, Inc. (hereinafter referred to as "Triad") to inspect Appellants' property and offer an opinion as to the cause of the slippages. Triad issued a report of its investigation on July 2, 2002, a copy of which was mailed to Appellant on August 5, 2002. The Triad report contained the following conclusion:

> It is difficult to make a positive assessment of the cause of the landslide since a significant amount of time has past [sic] since it first occurred. Based on our experience and knowledge, any excavation work performed at the toe of such a steep slope can initiate instability. Once instability has been initiated and a shear plane has formed within the soil, soil slippage typically continues to progress unless corrective action is taken. Based on our visual observations and information provided by Mr. Roberts, it is possible that the excavation work performed to install the water line caused the landslide.

Famco later obtained an inspection and report from CTL Engineering of West Virginia (hereinafter referred to as "CTL"). The CTL report dated September 2, 2003, reflects that:

> [t]he slope failure appears to be related to some movements at the toe of the slope as in most slide occurrences. The slopes in the subject area are steep in nature and

---

2. Appellant does not live or have a house on the land but he has constructed a metal garage on the property in which he repairs vehicles in his spare time.

3. A toe in this context is "the lowest part of the slope of an earth embankment or a cliff." *Webster's Third New International Dictionary* 2403 (G. & C. Merriam Company 1970).

no obvious causes related to the pipeline installation were visible due to the heavy vegetation on the slope and the elapsed time since the slope failure.

It was further noted in the CTL report that "[a]ccording to the West Virginia Landslide Study Pocatalico Quad Map (1976) the area was found to be in a naturally occurring slide-prone area of Kanawha County." Following review of these reports, Appellant maintains that he requested that Appellees either repair the property or compensate him for damages and they refused.

According to Appellant, at the same time the reports were being prepared the erosion of his property continued to progress as manifested by a ten foot section of his driveway breaking off and sliding down the hill on March 12, 2003. By June 2003, the slip had expanded an additional twenty feet. The slips again expanded in January and March 2004, the last of which resulted in debris falling to the bottom of the hill near the public highway.

Appellant filed suit on July 22, 2004, for property damages resulting from Appellees' negligent, defective and improper installation of water lines on his land. His complaint contained the allegations that although the waterline construction project specifications, maps and expert reports showed the area to be prone to slips, Appellees took no special precautions to prevent such problems. Following discovery, Appellees filed separate motions for summary judgment, contending inter alia that the suit was filed beyond the applicable two-year statute of limitations set forth in West Virginia Code § 55-2-12 (1959) (Repl.Vol.2000).[4] Appellant responded by arguing that because the damage to his property was ongoing, separate and continuous, the statute of limitations did not begin to run until the last damage occurred in March 2004. He additionally argued that even if the statute of limitations was not tolled under the continuing tort doctrine, it was tolled by

the discovery rule. In support of this assertion, Appellant claimed that he did not discover the full extent of his claim against the named defendants until he received the report from Triad in August 2002, and his suit was filed within two years of receiving the Triad report.

Finding no genuine issue of material fact, the lower court granted WVAW's motion for summary judgment on June 10, 2005,[5] and the motions for summary judgment of ELRE and Famco on June 29, 2006. The orders reflect the lower court's finding that under either theory advanced by Appellant, the two-year statute of limitations had expired by the time he filed suit. The orders specifically reflect the lower court concluding in all cases that the discovery rule did not apply because Appellant admittedly knew within three weeks of completion of the waterline project that his land had been damaged by the installation, knew the identity of Appellees and was aware of his claims against them no later than April 2002 when he contacted each of them. Moreover, the lower court found that the continuing tort doctrine did not apply under the facts of the case. The lower court essentially found no continuing tort was alleged as the only activity Appellant claimed as continuing was the progressive erosion of the land stemming from the work Appellees performed in or around 1999.

Appellant subsequently petitioned for appeal of both summary judgment orders, which this Court granted on February 28, 2007.

## II. Standard of Review

On appeal, "[a] circuit court's entry of summary judgement is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). We remain mindful during the course of our review that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry

4. West Virginia Code § 55-2-12 provides in pertinent part that: "Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property."

5. The June 10, 2005, order was appealed to this Court by Appellant. The petition was denied by order dated November 17, 2006, in which Appellant was given leave to reapply following entry of final judgment of all claims against all parties.

concerning the facts is not desirable to clarify the application of the law." Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N. Y.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). With these precepts in mind, we now consider whether the circuit court erred by granting summary judgment.

## III. Discussion

Appellant renews the arguments he raised below against entry of summary judgment on statute of limitations grounds. He maintains that his cause of action did not accrue until: (1) the last injury occurred to his land under the continuing tort doctrine, or (2) when he read the report of Triad under the discovery rule.

### A. Continuing Tort Doctrine

This Court formally adopted the continuing tort doctrine in syllabus point eleven of *Graham v. Beverage*, 211 W.Va. 466, 566 S.E.2d 603 (2002), by stating: "Where a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." Appellant in the instant case maintains that under *Graham* the statute of limitations is tolled by the continuing tort doctrine and would not begin to run until the date of the most recent slip or damage occurred on his land. Accordingly, since he last observed movement of his land in March 2004, he was well within the two-year filing limitation period by filing suit on July 22, 2004. We find this reading of the law adopted in *Graham* to be overly broad and inconsistent with our discussion in that case.

In framing the issue in *Graham*, we noted that the complaint raised by the Grahams dealt not only with the defendants' construction of an infiltration system affecting the Graham property but also with the defendants' continuing wrongful conduct in negligently failing to take action with regard to correcting the alleged inadequacies of that system. We found these facts to be distinguishable from the earlier case of *Hall's Park Motel, Inc. v. Rover Construction, Inc.*, 194 W.Va. 309, 460 S.E.2d 444 (1995), where-

in we held that "[w]here a plaintiff sustains a noticeable injury to property from a traumatic event, the statute of limitations begins to run and is not tolled because there may also be latent damages arising from the same traumatic event." *Id.* at Syl. Pt. 2. We stated in *Graham* that the grievance raised therein was not limited to "the 'traumatic event' of the construction of the infiltration system. Rather, the thrust of the . . . complaint is that the construction of the infiltration system *as well as the continuing wrongful conduct . . .* in negligently failing to take action with regard to correcting the alleged inadequacies of that system . . . ." 211 W.Va. at 477, 566 S.E.2d at 614 (emphasis added). To be clear, the distinguishing aspect of a continuing tort with respect to negligence actions is continuing tortious conduct, that is, a continuing violation of a duty owed the person alleging injury, rather than continuing damages emanating from a discrete tortious act. It is the continuing misconduct which serves to toll the statute of limitations under the continuing tort doctrine. Absent continuing misconduct, our holding in *Hall's Park Motel* applies and the statute of limitations begins to run from the date of the alleged tortious act. *See also Ward v. Caulk*, 650 F.2d 1144 (9th Cir.1981) (a continuing violation sufficient to toll a statute of limitations is occasioned by continual unlawful acts, not by continual ill effects from an original violation); *Defnet v. City of Detroit*, 327 Mich. 254, 41 N.W.2d 539 (1950) (a continuing tort occurs when all elements of the tort continue, not simply the damage element); *Holland v. City of Geddes*, 610 N.W.2d 816 (S.D.2000) (a continual consequence from a solitary unlawful act is not a continuing tort).

In the case now pending, Appellant is claiming damages for the single, discrete act of constructing and installing the waterline and not for any continuing malfunction of the installation or further misconduct of Appellees. Thus the last tortuous act or omission alleged by Appellant to have been committed by any Appellee was in 1999 when the waterline installation was completed. Without demonstration of a continuing duty or further misconduct on the part of any Appellees, there is no reason why the continuing tort

doctrine should apply. Thus, the general rule governs and "[t]he statute of limitations . . . begins to run when the right to bring an action . . . accrues." Syl. Pt. 1, in part, *Jones v. Trustees of Bethany College*, 177 W.Va. 168, 351 S.E.2d 183 (1986). We find no error in lower court's application of the law as it relates to continuing torts.

## B. Discovery Rule

 Appellant also argues that the discovery rule should apply to the facts of this case to toll the statute of limitations. "[U]nder the 'discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." Syl. Pt. 1, in part, *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992). With regard to tort actions, we further held in syllabus point four of *Gaither v. City Hospital Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997), that

> under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

Appellant maintains that he did not fully know he had a claim until he received the Triad report in August of 2002, rather than in 1999 as Appellees assert. Appellant argues that because there is a difference of opinion regarding when he learned of the injury and who was responsible for that injury, the lower court erred by granting summary judgment for Appellees and not submitting this material issue to a jury. We disagree. In light of the evidence, there was no genuine issue of material fact to submit to a jury.

 The record does not support Appellant's contention that there was a genuine question as to when he realized that his property was harmed due to the waterline installation project. Appellant's admissions in his complaint and deposition testimony clearly indicate that he knew within three weeks of completion of the construction project in 1999 that the stability of the hillside on his property had been compromised by the waterline installation. Additionally, there is evidence in the record that Appellant was aware of the identities of the various entities who bore some responsibility for the work that was done. According to Appellant's own phone log of communications regarding the developing problems on his land, Appellant contacted each Appellee in April of 2002. Although the Triad report provided additional information for Appellant to pursue his claim, it did not inform Appellant for the first time that his property had been disturbed by the waterline project, or that damage in the form of slips was occurring as a result of the disturbance, or who might bear responsibility for correcting the resulting problems. Furthermore, Appellant did not assert or prove that Appellees did anything to prevent him from learning of his claim. As we held in syllabus point three of *Cart v. Marcum*, 188 W.Va. 241, 423 S.E.2d 644 (1992),

> Mere ignorance of the existence of a cause of action or of the identity of the wrongdoer does not prevent the running of the statute of limitations; the "discovery rule" applies only when there is a strong showing by the plaintiff that some action by the defendant prevented the plaintiff from knowing of the wrong at the time of the injury.

The record clearly supports the lower court's finding that nothing in the facts supported application of the discovery rule in this case. As Appellant's complaint was filed in July 2004, his claim was raised beyond the statute of limitations period, whether that period began to run in 1999 when the project was completed and Appellant observed slippages on his property, or in 2002 when Appellant learned of the various entities who performed work on the project.

Having found no error in the lower court's application of the law with regard to the continuing tort doctrine or the discovery rule, we affirm the entry of summary judgments.

## IV. Conclusion

As a result of the foregoing review, the June 10, 2005, and June 29, 2006, summary

judgment orders of the Kanawha County Circuit Court are affirmed.

Affirmed.

Justice STARCHER concurs and files opinion.

STARCHER, J., concurring:

I write separately to note that the Court found that the defendants, the water company and its contractors, did not have any continuing duty regarding the property in question, and this finding is not challenged on appeal. That is, the defendants did a construction job and were, under the stipulated law and facts of the case, quit of any further responsibility for the land. The right-of-way owner, the county commission, did pay damages to the plaintiff—and properly so, because the commission had a continuing duty to maintain and use its property right so as not to unreasonably injure the public, or landowners like the plaintiff. The Court's opinion in the instant case should not be misread to relieve a property right owner of such a continuing duty.

This stated, accordingly, I concur.