# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**JASON WILHELM AND CRYSTAL WILHELM,**
**Plaintiffs Below, Petitioners**

**v.)  No. 24-ICA-118**          (Cir. Ct. Ohio Cnty. Case No. CC-35-2021-C-156)

**TUNNEL RIDGE, LLC,**
**Defendant Below, Respondent**

**FILED**

**February 28, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Jason Wilhelm and Crystal Wilhelm ("the Wilhelms") argue that the Circuit Court of Ohio County erred in finding that their claims against Respondent Tunnel Ridge, LLC, ("Tunnel Ridge") for causing damage to their property are barred by a two-year statute of limitations. Tunnel Ridge conducted underground mining in the vicinity of the Wilhelms' property in November 2017. The Wilhelms noticed subsidence damage to their property in May 2018, but did not file this action until September 2021. On February 21, 2024, the circuit court found that the Wilhelms' claims were barred by a two-year statute of limitations and granted Tunnel Ridge's motion for summary judgment. On appeal, Tunnel Ridge filed a brief in support of the circuit court's order. The Wilhelms filed a reply.[1]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The Wilhelms own residential property in the town of Valley Grove in Ohio County, West Virginia. In preparation for a longwall mining operation in that area, in August 2017, Tunnel Ridge performed a pre-mining inspection of the Wilhelms' property. Tunnel Ridge performed mining operations in the vicinity of the Wilhelms' property in November 2017. By May 2018, the Wilhelms discovered subsidence damage to their property. The Wilhelms notified Tunnel Ridge that they wished to exercise their rights under the West

---

[1] The Wilhelms are represented by James G. Bordas III, Esq., and Richard A. Monahan, Esq. Tunnel Ridge is represented by H. Brann Altmeyer, Esq., and Jacob C. Altmeyer, Esq.

1

Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA")[2] and its accompanying regulations[3] to have their property repaired.

On March 20, 2019, Tunnel Ridge's counsel sent the Wilhelms' counsel a letter from Tunnel Ridge addressed to the Wilhelms offering either to pay compensation for the damage to their property or pay for repairs to the property. The letter stipulated that Tunnel Ridge would not pay compensation or pay for repairs until the Wilhelms signed a release of all claims related to subsidence damage against Tunnel Ridge. On May 10, 2019, the Wilhelms' counsel sent Tunnel Ridge's counsel a letter with three estimates for the cost of repairs to the property. However, the parties failed to reach a settlement agreement.

On April 17, 2020, the Wilhelms filed a complaint against Tunnel Ridge in the United States District Court for the Northern District of West Virginia, seeking damages under the WVSCMRA. The Wilhelms alleged that Tunnel Ridge's mining activity caused the subsidence damage to their property, and that Tunnel Ridge had violated regulations issued pursuant to the WVSCMRA. The Wilhelms alleged that they became aware of the damage in May 2018. Tunnel Ridge filed a motion to dismiss for lack of subject matter jurisdiction, citing a lack of complete diversity, and on July 22, 2020, the Wilhelms filed a notice of voluntary dismissal.

On September 24, 2021, three years and four months after first discovering the subsidence damage, the Wilhelms filed the underlying action in the Circuit Court of Ohio County, again alleging that Tunnel Ridge's mining activity caused subsidence damage to their property and seeking damages under the WVSCMRA. The Wilhelms filed this suit pursuant to West Virginia Code § 22-3-25(f), which provides, in relevant part, that "[a]ny person or property who is injured through the violation by any operator of any rule, order or permit issued pursuant to [the WVSCMRA] may bring an action for damages . . . in any court of competent jurisdiction." W. Va. Code § 22-3-25(f) (1994). The Wilhelms sought relief under several regulations issued pursuant to the WVSCMRA, including West Virginia Code of State Rules § 38-2-16.2.c, which provides limited remedies where a coal operator's underground mining activities cause subsidence damage:

The operator shall:

16.2.c.1. Correct any material damage resulting from subsidence caused to surface lands, to the extent technologically and economically feasible, by restoring the land to a condition capable of maintaining the value and reasonably foreseeable uses which it was capable of supporting before subsidence;

---

[2] *See* W. Va. Code §§ 22-3-1 to -39.

[3] *See* W. Va. Code R. §§ 38-2-1 to -27.

2

16.2.c.2. Either correct material damage resulting from subsidence caused to any structures or facilities by repairing the damage or compensate the owner of such structures or facilities in the full amount of the diminution in value resulting from the subsidence. . . .

W. Va. Code R. §§ 38-2-16.2.c.1—38-2-16.2.c.2 (2018).[4]

On May 10, 2023, Tunnel Ridge filed a motion for summary judgment on the ground that the Wilhelms' action was barred under the two-year statute of limitations applicable to personal actions for damage to property set forth in West Virginia Code § 55-2-12(a) (1959). The parties briefed the motion, including supplemental briefing specifically requested by the circuit court on the issue of whether Tunnel Ridge's activity constituted a continuing tort. On February 21, 2024, the circuit court entered its order granting Tunnel Ridge's motion for summary judgment. The circuit court determined that West Virginia Code § 55-2-12(a) applied, that Tunnel Ridge's mining activity that allegedly damaged the Wilhelms' property ended in November 2017, and that—as alleged in their federal complaint—the Wilhelms were aware of the damage to their property by May 2018, causing their claims to accrue. The circuit court also determined that the continuing tort doctrine did not apply, and therefore found that the Wilhelms' action was time barred. It is from this order that the Wilhelms now appeal.

Our appellate review of a circuit court's order granting summary judgment is *de novo*. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Similarly, "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

The Wilhelms raise three assignments of error, which we reorder and consolidate into two issues. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (per curiam) (consolidating assignments of error). First, the Wilhelms argue that the circuit court erred in finding that their claims under the WVSCMRA are subject to the two-year statute of limitations applicable to personal actions for damage to property set forth in West Virginia Code § 55-2-12(a). Second, the Wilhelms argue that, even if West Virginia Code § 55-2-12(a) is applicable, the circuit court erred in finding that it barred their action.

---

[4] W. Va. Code R. § 38-2-16 was amended in 2018 and 2020. Based on the quoted language in the complaint, the Wilhelms appear to rely on the version in effect in 2017 or the 2018 amendments. Although the 2020 version was in effect at the time the Wilhelms filed this action, no party has argued that the 2020 version should apply. As it does not affect the statute of limitations issue before this Court, we decline to decide which version of the regulation would have applied in this case.

At the outset, we recognize that Syllabus Point 5 of *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009), requires a court assessing whether a cause of action is time-barred to first "identify the applicable statute of limitation for each cause of action." The Supreme Court of Appeals of West Virginia ("SCAWV") has not resolved what limitation period governs WVSCMRA actions. Tunnel Ridge argues, and the circuit court concluded, that the applicable statute of limitation in this case is the "catch-all," two-year limitation of West Virginia Code § 55-2-12(a), which provides:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property[.]

Our research, however, reveals a three-year statute of limitation contained within Chapter 22 of the West Virginia Code, the same chapter that contains the WVSCMRA. West Virginia Code § 22-1-16 (2000) provides:

> Notwithstanding any provision of this code to the contrary, no action, suit or proceeding for the administrative, civil or criminal enforcement of any provision of this chapter may be entertained unless commenced within three years from the date the right to bring the action, suit or proceeding has accrued. The limitation of this section applies, but is not limited to, actions, suits or proceedings for the recovery of any fine, penalty or forfeiture, pecuniary or otherwise. This section does not apply to the enforcement of any provision when the violation is part of a continuing violation and the last act of the continuing violation occurred within three years from the date of the commencement of the enforcement action.

The parties did not raise the three-year limitation period contained in West Virginia Code § 22-1-16 before the circuit court or brief its applicability to this Court. Regardless, we need not resolve whether the Wilhelms' action under the WVSCMRA is governed by the two-year limitation in West Virginia Code § 55-2-12(a) or the three-year limitation in West Virginia Code § 22-1-16, [5] because the undisputed facts in this case show that the

---

[5] As set forth above, West Virginia Code § 22-1-16 applies to actions for the "civil . . . enforcement of any provision of" Chapter 22. West Virginia Code § 22-3-4 delegates primary responsibility for enforcement of the WVSCMRA to the Secretary of the West Virginia Department of Environmental Protection. However, WVSCMRA's citizen suit statute, West Virginia Code § 22-3-25, provides that "any person having an interest which is or may be adversely affected may commence a civil action . . . to compel compliance with this article." W. Va. Code § 22-3-25(a)(1). As noted above, the Wilhelms filed their action under West Virginia Code § 22-3-25(f), a separate subsection of WVSCMRA's citizen suit provision, which provides that "[a]ny person or property who is injured through

4

Wilhelms filed their WVSCMRA action three years and four months after discovering mine subsidence. We now turn to the parties' arguments.

The Wilhelms first argue that the circuit court's application of any statute of limitation (in this case, West Virginia Code § 55-2-12(a)) to their claims is inconsistent with the federal Surface Mining Control and Reclamation Act ("FSMCRA"). The SCAWV has held that "[w]hen a provision of the [WVSCMRA], is inconsistent with federal requirements in the [FSMCRA], 30 U.S.C. § 1201 *et seq.*, the state act must be read in a way consistent with the federal act." Syl. Pt. 1, *Canestraro v. Faerber*, 179 W. Va. 793, 374 S.E.2d 319 (1988). Similarly, "[a] state regulation enacted pursuant to the [WVSCMRA], must be read in a manner consistent with federal regulations enacted in accordance with the [FSMCRA]." Syl. Pt. 5, *Schultz v. Consolidation Coal Co.*, 197 W. Va. 375, 475 S.E.2d 467 (1996).

In support of this argument, the Wilhelms cite to the record of the Office of Surface Mining Reclamation and Enforcement's ("OSM") approval of a federal regulation superseding portions of Pennsylvania's Bituminous Mine Subsidence and Land Conservation Act. *See* Pennsylvania Regulatory Program, 69 Fed. Reg. 71551 (Dec. 9, 2004) (to be codified at 30 C.F.R. pt. 938). This regulation superseded a Pennsylvania statute setting forth a two-year limitations period for a party claiming subsidence damage to file a claim with the Pennsylvania Department of Environmental Resources to investigate the damage. *See id.*; 52 Pa. Stat. § 1406.5e(b). The Wilhelms rely on statements in OSM's response to public comments on the proposed regulation, in which OSM indicated that "Federal law does not have time limitations on citizens' rights to seek compensation, repair or replacement." Pennsylvania Regulatory Program, 69 Fed. Reg. 71551, 71558 (Dec. 9, 2004) (to be codified at 30 C.F.R. pt. 938).

We find the Wilhelms' reliance on OSM's prior statements in the regulatory history to be misplaced. These statements do not capture the full context of OSM's decision to supersede Pennsylvania's statute of limitations. In the December 9, 2004, record the Wilhelms cite, OSM incorporated its 2001 discussion of the same statute. *See id.* at 71554. In its 2001 discussion, OSM declined to approve the statute of limitations, reasoning that it could potentially limit actions by Pennsylvania to enforce the Act. *See* Pennsylvania Regulatory Program, 66 Fed. Reg. 67010, 67023-67024 (Dec. 27, 2001) (to be codified at

---

the violation by any operator of any rule, order or permit issued pursuant to this article may bring an action for damages." W. Va. Code § 22-3-25(f). However, at oral argument, the Wilhelms' counsel characterized their action as one for the "enforcement" of the WVSCMRA.

Because their action is barred regardless of which statute of limitations applies, it is unnecessary to decide if all or part of their action is an action for the civil enforcement of the WVSCMRA such that it would be governed by West Virginia Code § 22-1-16.

30 C.F.R. pt. 938). OSM found that such a restriction would conflict with the general rule that suits filed by a sovereign, such as a state or the federal government, are not subject to a statute of limitations unless the relevant legislature explicitly provides otherwise. *See id.* However, OSM distinguished this principle that a sovereign is not subject to a statute of limitations from the general rule for suits filed by private parties that "when a federal statute contains no limitations provisions, an applicable state statute of limitations should be applied, unless there is an analogous federal statute of limitations, or the state law would frustrate or interfere with national policies." *Id.* The key distinguishing factor is that OSM superseded a statute of limitations governing actions by the Pennsylvania government, while in this case, we address the application of a generally applicable statute of limitations to a private citizen lawsuit. Therefore, we are unpersuaded that OSM's prior disposition compels this Court to find that no statute of limitations applies to the Wilhelms' claims.

The Wilhelms also cite several federal cases applying the FSMCRA in which the court found that an action filed by the federal government to collect reclamation fees is not subject to any statute of limitations. They also note that at least one federal court applied a six-year statute of limitations to such actions, while others applied a five-year statute of limitations to actions for civil penalties under the FSMCRA. Although the Wilhelms do not set forth this argument precisely, they imply that, because federal courts have found that FSMCRA actions are either subject to no statute of limitations or a five- or six-year statute of limitations, that it would be contrary to the application of the FSMCRA to affirm the circuit court's assessment that WVSCMRA actions are subject to the two-year statute of limitations identified in West Virginia Code § 55-2-12(a).

We disagree. As an initial matter, the cases in which a court found that no statute of limitations applies to an action filed by the federal government to recover fees under the FSMCRA are inapplicable to this case. Like OSM's decision to supersede Pennsylvania's statute of limitations, those cases are premised on the principle that "a sovereign is exempt from the operation of a statute of limitations." *United States v. Hawk Contracting, Inc.*, 649 F. Supp. 1, 2 (W.D. Pa. 1985); *see, e.g.*, *United States v. Tri-No Enterprises, Inc.*, 819 F.2d 154, 158-59 (7th Cir. 1987) (finding no limitations period applied to federal reclamation actions because Congress had not explicitly provided that a statute of limitations applied). This principle is irrelevant to the claims between private parties at issue in this case.

Similarly, the federal cases applying longer limitations periods to FSMCRA claims do not preclude this court from applying the two- or three-year period of limitations to the WVSCMRA claims at issue in this case. The federal courts that determined that FSMCRA actions for the recovery of civil penalties are subject to a five-year statute of limitations applied 28 U.S.C. § 2462,[6] a generally applicable statute of limitations for actions to

---

[6] 28 U.S.C.A. § 2462 (1948) provides that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be

recover civil penalties. *See Arch Min. Corp. v. Babbitt*, 894 F. Supp. 974, 984 (S.D. W. Va. 1995), *aff'd*, 104 F.3d 660 (4th Cir. 1997); *United States v. McCune*, 763 F. Supp. 916, 917 (S.D. Ohio 1989). Similarly, the court that found that an action under the FSMCRA for the collection of reclamation fees was subject to a six-year statute of limitations found that either 26 U.S.C. § 6501(e), which governs actions to collect income or excise taxes, or 28 U.S.C. § 2415, which governs contract actions, controlled. *See United States v. Gary Bridges Logging & Coal Co.*, 570 F. Supp. 531, 532-33 (E.D. Tenn. 1983). In each instance, the court assessed the type of action and applied the generally applicable statute of limitations under federal law. Additionally, at least one federal court has applied a state's statute of limitations to a suit filed under the FSMCRA's citizen suit provision, 30 U.S.C. § 1270. *See Dakota Res. Council v. N. Dakota Pub. Serv. Comm'n*, No. 1:12-CV-064, 2013 WL 12085480, at *9 (D.N.D. Sept. 3, 2013) (applying the three-year statute of limitations set forth in N.D.C.C. § 28–01–22.1 for suits against the state to an action filed under 30 U.S.C. § 1270).

Here, the generally applicable two-year statute of limitations under West Virginia law for a claim between private parties for damage to property is West Virginia Code § 55-2-12(a), while the three-year limitation in West Virginia Code § 22-1-16 governs actions for the enforcement of provisions of Chapter 22, including the WVSCMRA. Therefore, the circuit court interpreted the WVSCMRA and its regulations consistently with federal interpretations of the FSMCRA by applying a statutory limitation period and finding the Wilhelms' claims were not timely filed.

Next, the Wilhelms contend that, if a claim arising under the WVSCMRA is subject to a general statute of limitations, it should be the five-year statute of limitations for contract-based claims set forth in West Virginia Code § 55-2-6, which would result in their claims not being barred. The Wilhelms emphasize that they are not required to demonstrate a violation of a statute or rule to be entitled to relief under West Virginia Code of State Rules § 38-2-16.2.c. They cite the SCAWV's holding that:

> A surface owner may commence a civil action [for damages] against a coal operator pursuant to West Virginia Code § 22-3-25(f) (1994) alleging that injury to the surface owner's person or property was caused through the coal operator's violation of a rule, order, or permit issued under the [WVSCMRA]. . . . . In the event the surface owner is unable to prove that the coal operator violated such rule, order, or permit, or proves the violation but fails to prove that the violation caused the alleged injury, then the surface owner's remedies for subsidence damage caused by a coal operator are those provided in the West Virginia Code of State Rules §§ 38-2-16.2.c to 38-2-16.2.c.2.

---

entertained unless commenced within five years from the date when the claim first accrued[.]"

Syl. Pt. 13, in part, *McElroy Coal Co. v. Schoene*, 240 W. Va. 475, 813 S.E.2d 128 (2018). The Wilhelms claim that this right to repair or compensation is more akin to a contractual right, and that an action to enforce this right should not be subject to a "tort" statute of limitations.[7]

We disagree that the WVSCMRA generally or West Virginia Code of State Rules § 38-2-16.2.c specifically creates contractual rights enforceable between private parties. While the SCAWV has recognized that statutes can create contractual rights, in the cases the Wilhelms cite, the SCAWV found that the statutes at issue created contractual rights between government entities and private individuals.[8] *See Dadisman v. Moore*, 181 W. Va. 779, 790, 384 S.E.2d 816, 827 (1988) (finding that public employees' statutory pension rights were contractual rights); *Adams v. Ireland*, 207 W. Va. 1, 9, 528 S.E.2d 197, 205 (1999) (applying *Dadisman*); *Nicewarner v. City of Morgantown*, 249 W. Va. 120, 128, 894 S.E.2d 902, 910 (2023) (finding that a statute providing for firefighters to receive enhanced compensation on legal holidays created contractual right). The Wilhelms have not identified a case in which the SCAWV found that a statute—or an accompanying regulation—created a contractual right between private parties, and we decline to do so in this case.

Accordingly, we affirm the circuit court's conclusion that the Wilhelms' WVSCMRA claims, filed more than three years after first finding mine subsidence, were filed outside of the statute of limitation.

The Wilhelms' second major contention is that, even if the circuit court was correct in applying a statute of limitations to their claims, it erred in granting Tunnel Ridge's

---

[7] The Wilhelms' characterization of West Virginia Code § 55-2-12 as a "tort" or "tort-based" statute of limitations is an oversimplification. While West Virginia Code § 55-2-12 commonly applies to tort actions, it governs "personal actions." *See State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 232 n.14, 488 S.E.2d 901, 912 n.14 (1997) (discussing the distinction between "personal actions" and "real actions"). The SCAWV has recognized that West Virginia Code § 55-2-12 is a "catch all" statute of limitations that applies to statutory actions as well as common law torts. *See id.* (finding that § 55-2-12 governed action filed under Hazardous Waste Management Act); *Metz v. E. Associated Coal, LLC*, 239 W. Va. 157, 162, 799 S.E.2d 707, 712 (2017) (finding that § 55-2-12 applied to circuit court action filed under West Virginia Human Rights Act).

[8] Similarly, federal courts have specifically recognized that statutes can create contractual rights enforceable against the government. *See, e.g.*, *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 17 n.14 (1977) ("In general, a statute is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State.").

motion for summary judgment on statute of limitations grounds.[9] In support of this position, the Wilhelms first argue that the circuit court should have applied equitable tolling or equitable estoppel to find that the statute of limitations did not apply in this case.[10] The SCAWV has recognized that "two types of equitable modification [regarding the statute of limitations] are generally recognized: (1) equitable tolling, which often focuses on the plaintiff's excusable ignorance of the limitations period and lack of prejudice to the defendant and (2) equitable estoppel, which usually focuses on the actions of the defendant." *Adkins v. Clark*, 247 W. Va. 128, 134, 875 S.E.2d 266, 272 (2022) (quoting *Bradley v. Williams*, 195 W. Va. 180, 184, 465 S.E.2d 180, 184 (1995)).

In arguing that equitable tolling should excuse their failure to file their claims within the statute of limitations, the Wilhelms focus exclusively on the alleged lack of prejudice to Tunnel Ridge. However, the SCAWV has explained that lack of prejudice is irrelevant "when the excusable ignorance factor has not been met." *Adkins*, 247 W. Va. at 134, 875 S.E.2d at 272. Because the Wilhelms have not argued excusable ignorance, their equitable tolling argument is without merit.

With respect to equitable estoppel, the SCAWV has held that:

In order to create an estoppel to plead the statute of limitations the party seeking to maintain the action must show that he was induced to refrain from bringing his action within the statutory period by some affirmative act or

---

[9] Except to argue Tunnel Ridge engaged in a continuing tort, the Wilhelms do not challenge the circuit court's conclusion that their claims accrued on or before May 2018. Accordingly, other than addressing the continuing tort argument, it is unnecessary for this Court to revisit the circuit court's statute of limitations analysis under *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009).

[10] In the section of their brief addressing equitable tolling and equitable estoppel, the Wilhelms briefly assert that their claims "are more aptly grounded in equity," and cite *Dunn v. Rockwell* for the proposition "that there is no statute of limitation for claims seeking equitable relief." *Dunn v. Rockwell*, 225 W. Va. 43, 54, 689 S.E.2d 255, 266 (2009). It is unclear if the Wilhelms intended this brief discussion merely as additional support for their arguments in favor of equitable tolling or equitable estoppel, or as an alternative basis for this Court to find that their claims are not subject to any statute of limitations. To the extent it is the latter, we find that it is not properly raised, and we decline to address it. *See State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) (noting that issues "mentioned only in passing . . . are not considered on appeal); *State, Dep't of Health v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (finding that a "skeletal argument" does not preserve a claim on appeal).

conduct of the defendant or his agent and that he relied upon such act or conduct to his detriment.

Syl. Pt. 1, *Humble Oil & Ref. Co. v. Lane*, 152 W. Va. 578, 165 S.E.2d 379 (1969). The Wilhelms argue that they reasonably relied on Tunnel Ridge's engagement in settlement discussions in refraining from filing their claims within the statute of limitations. They claim that Tunnel Ridge's "deceptive purpose in engaging and prolonging such talks was to pursue the dismissal of any litigation on non-merit-based grounds," and that they only became aware that they would need to refile their claims upon Tunnel Ridge informing them that it would not complete a settlement unless the Wilhelms executed a release of claims.

We do not find that Tunnel Ridge's participation in settlement discussions in this case supports the Wilhelms' argument that Tunnel Ridge induced them to refrain from filing their action. Indeed, the Wilhelms' admission that Tunnel Ridge's insistence on a release of all claims prompted them to file their lawsuit is fatal to this argument.[11] The record is clear—and the Wilhelms acknowledge as much in their brief—that at least as early as March 2019, Tunnel Ridge insisted on a release of claims before it would compensate the Wilhelms or pay for repairs. Accordingly, even under the Wilhelms' characterization of the record, Tunnel Ridge's settlement communications could not have induced them to refrain from filing their suit until after the expiration of the statute of limitations.

Next, the Wilhelms argue that the circuit court should have denied Tunnel Ridge's motion for summary judgment under the continuing tort doctrine. The SCAWV has held that "[w]here a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." Syl. Pt. 11, *Graham v. Beverage*, 211 W. Va. 466, 566 S.E.2d 603 (2002). "The distinguishing aspect of a continuing tort with respect to negligence actions is continuing tortious conduct, that is, a continuing violation of a duty owed the person alleging injury, rather than continuing damages emanating from a discrete

---

[11] The extrajurisdictional cases the Wilhelms cite do not support their argument that Tunnel Ridge's participation in settlement negotiations, by itself, should have required the circuit court to apply the principle of equitable estoppel. *See, e.g.*, *Townes v. Rusty Ellis Builder, Inc.*, 98 So. 3d 1046, 1055 (Miss. 2012) ("The Court will not apply equitable estoppel to prevent a time bar where good-faith settlement negotiations are the only evidence submitted by the plaintiff."); *City of Brooksville v. Hernando Cnty.*, 424 So. 2d 846, 848 (Fla. Dist. Ct. App. 1982) (noting that, in the absence of deception, ongoing settlement negotiations do not toll the statute of limitations); *Hart v. Bridges*, 591 P.2d 1172, 1174 (Okla. 1979) ("Mere negotiations of course do not make out a case for estoppel.").

tortious act." Syl. Pt. 4, *Roberts v. W. Va. Am. Water Co.*, 221 W. Va. 373, 655 S.E.2d 119 (2007).

The Wilhelms initially argue that the continuing tort doctrine applies in this case because there is an issue of material fact about when Tunnel Ridge's mining activity that could have caused the subsidence damage actually ceased. In its motion for summary judgment, Tunnel Ridge argued that its mining activities in the vicinity of the Wilhelms' property ceased in November 2017. In support of the motion, Tunnel Ridge submitted a "mine timing map," as well as affidavits of its General Manager and its Manager of Land, Environmental and Government Affairs stating that Tunnel Ridge did not conduct mining activities in the vicinity of the Wilhelms' property after November 2017.[12]

On appeal, the Wilhelms identify several items in the record that purportedly contradict Tunnel Ridge's evidence and create an issue of material fact on whether Tunnel Ridge's mining that could have damaged their property ceased in November 2017 or continued through 2022. The first is Tunnel Ridge's admission in discovery that it had conducted mining operations beneath the surface of the official boundaries of Valley Grove from 2017 through 2022. However, the Wilhelms do not explain how this conflicts with Tunnel Ridge's evidence. To the extent the Wilhelms invite the Court to assume that Tunnel Ridge's mining activities under Valley Grove from 2018 through 2022 must have been in the vicinity of the Wilhelms' property such that they could have caused subsidence damage, we decline to do so. "While it is true [at summary judgment] that 'the nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the evidence, [such evidence] cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" *Barbina v. Curry*, 221 W. Va. 41, 49, 650 S.E.2d 140, 148 (2007) (quoting *Marcus v. Holley*, 217 W. Va. 508, 516, 618 S.E.2d 517, 525 (2005)).

The Wilhelms also assert that the affidavits of Jason Wilhelm and expert Timothy D. Bechtel contradict Tunnel Ridge's position that the mining activity that could have damaged their property ceased in 2017. However, neither affidavit includes any statement that Tunnel Ridge continued mining in the vicinity of the Wilhelms' property after November 2017. Accordingly, the Wilhelms have not shown that that the circuit court erred

---

[12] On appeal, Tunnel Ridge also cites to two depositions taken after it filed its motion for summary judgment as additional support for the proposition that the mining activities that could have caused subsidence damage to the Wilhelms' property ceased in November 2017. Excerpts from these depositions were filed in the circuit court with Tunnel Ridge's supplemental reply in support of its motion for summary judgment. However, based on the circuit court's explicit reference to the two affidavits and the mine timing map in its final order, it is unclear if the circuit court relied on these depositions.

11

by finding no issue of material fact regarding whether Tunnel Ridge committed a continuing tort.[13]

The Wilhelms also argue that the circuit court should have applied the continuing tort doctrine because Tunnel Ridge committed an ongoing violation of West Virginia Code of State Rules § 38-2-16.2.c by not repairing their land or providing them compensation as provided in that regulation, and that they continued to suffer damage. The Wilhelms cite *Graham*, in which the SCAWV found a continuing tort where the defendants allegedly negligently installed a water infiltration system on their property, which continually malfunctioned and caused damage to the plaintiffs' property. *See Graham v. Beverage*, 211 W. Va. 466, 471, 566 S.E.2d 603, 608 (2002). The SCAWV rejected the circuit court's conclusion that the negligence claim accrued upon the negligent installation of the system and the initial damages it caused to the plaintiffs' property, finding that the plaintiffs' claim was based on "the continuing wrongful conduct of the [defendants] in negligently failing to take action with regard to correcting the alleged inadequacies of that system [that] is causing continuing injuries to [plaintiffs'] real and personal property." *Graham*, 211 W. Va. at 477, 566 S.E.2d at 614.

We find that the Wilhelms misread *Graham* and its progeny. In this case, the Wilhelms' property damage was allegedly caused by Tunnel Ridge mining in the vicinity of their property, which ceased in 2017. Although there is evidence in the record that subsidence damage continued to occur through the time the Wilhelms filed their complaint, the relevant conduct did not continue. These facts are more similar to *Roberts*, in which the plaintiff claimed that the defendants' negligent installation of a waterline caused continuing land slips on his property. *See Roberts v. W. Va. Am. Water Co.*, 221 W. Va. 373, 378, 655 S.E.2d 119, 124 (2007). Although the plaintiff contended in *Roberts* that the reasoning of *Graham* applied, the SCAWV distinguished *Graham*, finding that the plaintiff was "claiming damages for the single, discrete act of constructing and installing the waterline and not for any continuing malfunction of the installation or further misconduct of [the defendants]." *Roberts*, 221 W. Va. at 378, 655 S.E.2d at 124.

Here, like the *Roberts* plaintiff, the Wilhelms' claim is based on a discrete act of mining in the vicinity of their property. The SCAWV has held that "[w]here a plaintiff sustains a noticeable injury to property from a traumatic event, the statute of limitations begins to run and is not tolled because there may also be latent damages arising from the same traumatic event." Syl. Pt. 2, *Hall's Park Motel, Inc. v. Rover Const., Inc.*, 194 W. Va. 309, 460 S.E.2d 444 (1995). Accordingly, we reject the Wilhelms' argument that Tunnel

---

[13] The Wilhelms also contend that Tunnel Ridge's evidence should have been discounted because it is self-serving. However, a "a nonmoving party cannot avoid summary judgment merely by asserting that the moving party is lying." *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 61 n.14, 459 S.E.2d 329, 338 n.14 (1995).

Ridge committed a continuing tort by not completing the limited remedies available to the Wilhelms for that discrete act.[14]

Based on the foregoing, we affirm the February 21, 2024, order of the Circuit Court of Ohio County.

Affirmed.

**ISSUED:** February 28, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge Ryan White

---

[14] Though the Wilhelms repeatedly note that their action is not based in tort, they argue for the tolling of the statute of limitations under the SCAWV's caselaw recognizing the continuing tort doctrine, rather than those cases discussing a "continuing violation" of a statute. However, while a continuing violation also tolls the statute of limitations, as with the continuing tort doctrine, the act constituting the violation, rather than simply the resulting damages, must be ongoing. *Compare* Syl. Pt. 4, *W. Va. Inst. of Tech. v. W. Va. Hum. Rts. Comm'n*, 181 W. Va. 525, 383 S.E.2d 490 (1989) (finding that ongoing illegal pay disparity was continuing violation of the Human Rights Act) *with* Syl. Pt. 2, *Indep. Fire Co. No. 1 v. W. Virginia Hum. Rts. Comm'n*, 180 W. Va. 406, 376 S.E.2d 612 (1988) (finding that illegal firing was a discrete violation of Human Rights Act that triggered the statute of limitations at the time plaintiff was notified of termination). Therefore, our analysis would have been the same had the Wilhelms invoked the continuing violation doctrine.

In oral argument, the Wilhelms asserted that the continuing violation doctrine is applicable to WVSCMRA violations, and that under the terms of the statute a new claim is triggered each time the surface property is damaged. However, the Wilhelms did not point this Court to any case law supporting this application of the doctrine, and we decline to adopt this line of reasoning without additional guidance from the SCAWV.